**ORIGINAL**

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

Shaun A. Kranish,                                    )
                                                      )
                              Plaintiff,   **06CV50071**
                                                      )
              v.                           **JUDGE REINHARD**
                                                      )
Edward A. Crumb, Rock Valley College                 )
- Community College District 511,          )————————————
an Illinois Public Community College,      )
Rock Valley College Board of Trustees      ) JURY TRIAL DEMANDED
of Community College District 511,         )
a body politic and corporate, Rock         )
Valley College Police Department           )
Chief of Police Joe Drought, Jack          )
J. Becherer, President Rock Valley         )    **F I L E D**
College, Amy Diaz, Associate Vice          )                          **NF,**
President for Student Development and      )     APR 0 7 2006
Janna L. Shwaiko and unknown others,       )
                                                      )
                              Defendants.  )     **MICHAEL W. DOBBINS**
                                                 **CLERK, U.S. DISTRICT COURT**

### COMPLAINT

Now Comes the Plaintiff, Shaun A. Kranish, (hereinafter referred to as "Kranish" or "Plaintiff"), by his attorney, Walter P. Maksym, and complains of the Defendants, Officer Edward A. Crumb (Badge #167)(hereinafter referred to as "Crumb"), Rock Valley College - Community College District 511, an Illinois Public Community College organized under the Public Community College Act of the State of Illinois (hereinafter referred to as "Rock Valley College" or "RVC"), Rock Valley College Board of Trustees of Community College District 511, a body politic and corporate, Rock Valley College Police Department, Rock Valley College Police Department Chief of Police Joe Drought, Rock Valley College Police Department Jack J. Becherer, President Rock Valley College, Amy Diaz, Associate Vice President for Student Development and Janna L. Shwaiko, all individually and as employees and

1



agents of Rock Valley College and potential unknown other John and Jane Does not presently known, (hereinafter sometimes referred to as jointly as the "Defendants") and alleges as follows:

## Nature of the Action

1. Kranish brings these actions against the Defendants to recover damages for wrongful, unwarranted and illegal search and seizure, false arrest, false imprisonment and illegal detention, malicious prosecution, stigmatization, infringement of his free speech, movement. Association, travel and liberty rights and interests, denial of due process and other injuries and deprivations of his rights which were visited upon him by Defendants under color of state law and pursuant to a conspiracy to deprive him of his rights, privileges, and immunities secured by the United States Constitution, despite the fact that he was a peaceful, law abiding citizen innocent of any crime or wrongdoing, for which he seeks damages, injunctive and declaratory relief.

2. This Complaint alleges claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983, the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, as well as claims under Illinois common law, statutes and constitutional law governing free speech, illegal detention, false arrest, false imprisonment, unwarranted and illegal search and seizure, battery conspiracy, intentional infliction of emotional distress, negligence, willful, wanton, reckless and unreasonable conduct, malicious prosecution, conspiracy, intentional interference with educational contract, prospective economic and academic advantage, stigmatization, defamation and false light and related other claims and damages.

## Jurisdiction

3.     This Court has original jurisdiction of Kranish's
federal law claims pursuant to 28 U.S.C. § 1331 and 28
U.S.C. § 1343(a)(3). The Court has jurisdiction of
Kranish's state law claims pursuant to 28 U.S.C. § 1367.

## Venue

4.     Venue in the Western District of Illinois,
Eastern Division is proper pursuant to 28 U.S.C. § 1391(a)
in that Plaintiff's claims arose within this District out
of a the false and wrongful arrest and related wrongful
conduct and use of excessive force which occurred in the
County of Winnebago, State of Illinois, as is hereinafter
more particularly alleged and all of the Defendants reside
within this District.

## Parties

5.     That Kranish was, at all times relevant, a
reputable, law abiding, adult resident and citizen of
Rockford, County of Winnebago, State of Illinois, and a
duly admitted, register and tuition paying student at RVC
who, prior to and at the time of the events alleged herein,
had no record of arrest or criminal conviction.

6.     That on information and belief, Officer Edward A.
Crumb (Badge #167) (hereinafter referred to as "Crumb") was
at all times employee and agent of Rock Valley College –
Community College District 511, that was at all times
relevant, an Illinois Public Community College organized
under the Public Community College Act of the State of
Illinois (hereinafter referred to as "Rock Valley College"
or "RVC"), Rock Valley College Board of Trustees of
Community College District 511, was at all times relevant a
body politic and corporate, (hereafter referred to as the
"Board"), Rock Valley College Police Department (hereafter

referred to as the "Campus Police") was at all times relevant part of and run by RVC, Rock Valley College Police Department Chief of Police Joe Drought (hereinafter referred to as "Drought"), Jack J. Becherer (hereinafter referred to as "Becherer"), was at all times the President of RVC, Amy Diaz (hereinafter referred to as "Diaz"), was at all times relevant the Associate Vice President for Student Development and Janna L. Shwaiko (hereinafter referred to as "Shwaiko"), was at all times relevant, as were Crumb, Drought, Becherer, and Diaz, employees and agents of RVC. Crumb, Drought, Becherer, Diaz and Shwaiko are all sued individually and in their official capacities as employees and agents of RVC as are potential unknown others (hereinafter all referred to collectivly as as the "Defendants."

7. That, on information and belief and at all times relevant, the Defendant Board, is and was at all times relevant, regarding the misconduct for which it and its agents, offices and employees are sued in this Complaint, a political subdivision of and a municipal corporation duly organized under the laws of the State of Illinois, and as such is and was responsible for the policies, practices, customs and actions of the its police officers, agents and employees and, along with the other Defendants, maintained offices in the Rockford, County of Winnebago, State of Illinois.

8. That, on information and belief and at all times relevant, Defendants Crumb, Drought, Becherer, Diaz and Shwaiko were and remain agents and employees of the Board that, was responsible for the policies, practices, and customs of the its police officers, agents and employees, and operated in and about Winnebago County, Illinois.

4

9. That, on information and belief and at all times relevant, Defendants Crumb, Drought, Becherer, Diaz and Shwaiko, on information and belief, and regarding the misconduct for which they are sued, were and represented and held themselves out to be agents, officers and employees of RVC and the Board.

10. That Defendants John and Jane Does and all others whose identities are not presently known, were at all relevant times relevant, also agents and employees of the RVC and/or the Board.

11. That on information and belief and at all times relevant, each of the above-named Defendants were acting under color of law or were acting jointly and/or in conspiracy with persons acting under color of law.

<u>Facts Common to All Counts</u>

12. That, at all times relevant, Kranish was and remains a student registered and attending Rock Valley College, in Rockford, Winnebago County, Illinois, had a good reputation as a honest, law-abiding citizen and has no other record of arrest or conviction.

13. That at all times relevant Kranish was also a civil rights activist and founder of ICarry, an organization and community of members that associate, primarily online at http://www.icarry.org. Kranish and ICarry are dedicated the restoration of the Second Amendment of the U.S. Constitution in Illinois. Kranish and the ICarry members believe that countless laws and restrictions are in place that not only infringe the right of honest, law -abiding citizens to keep and bear arms, but present serious public safety risks across the state. Countless lives are damaged and destroyed because of the

laws restricting gun ownership and possession in the State
of Illinois State.

14.   That on Tuesday, October 11th, 2005, Kranish, who
had never before been arrested, attended his classes at and
always endeavored to follow every rule and regulation RVC
has in place. His most serious infraction prior to that
date was being slightly little late to class from time to
time. Also, as of that date, on information and belief, and
at all times relevant, Becherer had and enforced a strict
zero-tolerance policy, which was known, or should have been
known, to the Board, of not allowing any peaceful student
demonstrations, political speech, dissent or protests of
any  kind  on  college  campuses  with  which  he  might
subjectively disagree, including, RVC, that he was then and
there responsible for administering.

15.   That  as  a  civil  rights  activist,  Kranish
cherished his right to freedom of speech and was exercising
it on and about the RVC campus in order to raise awareness
of what he, members of the ICarry and many other Illinois
citizens believe to be the horrible situation in Illinois
with regard to suppression, over regulation, erosion and
infringement of Second Amendment rights and their political
efforts to have Illinois adopt "conceal-carry" legislation
and join the vast majority of States, 48 of the 50 United
States,  that  have  adopted  legislation  that  now  allow
honest, law-abiding citizens to carry concealed firearm
for, *inter alia,* the protection and self-defense of their
families, themselves and their property.

16.   That Kranish had never done or worn anything
offensive, alarming or disruptive on or about the RVC
Campus or anywhere else. For approximately two weeks prior
to October 11th, 2005, he openly and conspicuously wore a

6

small, empty, nylon pouch that those in the pro-self-defense/Pro-Second Amendment community commonly refer to as a holster, carry-case, or fanny-pack, on the side of his leg, as a symbolic statement of his aforesaid constitutional and political beliefs. He alarmed no one, disrupted nothing, received no complaints from any RVC student or administrative or faculty member, any campus security, campus police, any faculty members or anyone else about his attire or conduct. Though conspicuously worn, not once was he asked what it was or why he wore it, nor was he ever asked to take it, the empty holster or his jacket off. On the contrary, this small accessory to his clothing and his jacket prompted a number of fellow students to approach him and begin friendly discourse about the Second Amendment, gun-rights, and the state and country's situation. During this time, no one was ever alarmed, no one ever reported what he was wearing, and furthermore, no one at RVC ever expressed any concern or objection thereto. This small, empty, harmless nylon pouch had become a part of his everyday expressive life and a silent vehicle and means him to symbolically express his aforesaid views in an effective, peaceable, non-disruptive and noticeable way. At no time did Kranish ever intend to nor did frighten or intimidate any person nor interfere with or disrupt RVC or anyone else's activities and he never did.

17. That as a like and further expression of his beliefs, Kranish regularly wore and was attired in the above-referenced, custom-made windbreaker or jacket, most often referred to as a "coaches jacket" commonly worn by sports coaches, and often carries a team name or logo. His was navy blue, and had "I CARRY" and ".ORG" in yellow on two equal-sized lines on the back. He worn it to express

his above-mentioned views and to publicize the organization and silently and graphically communicate a means for others to find out and/or join the organization or make contact with him via the Internet. The front of the jacket bore a small "I CARRY" on the top right at chest level. He wore this jacket every time he was on campus as did he the pouch. Again, none of his teachers nor any of the active-duty RVC campus police officer noticed or questioned either item

18. That on Tuesday, October 11th, 2005, following his morning class Kranish decided to see about speaking with school officials about the school's policy against self-defense. He had been considering doing so for a long time, and had been putting it off. Tuesday seemed like a convenient time, so he decided to see about having a meeting with the RVC President about the issue and to express his strong belief based on the Constitution in general, statistics, human rights, the beliefs of the founding fathers of this country, and the Second Amendment to the Constitution in particular, and common sense, and logic, that governmental policies against self-defense are immoral and quite possibly the gravest threat to public safety. Kranish merely wanted to share as much information as possible about his organization, facts and information on the Second Amendment and the right to self-defense with someone who could really take it into consideration.

19. That then and there, Kranish walked into RVC's Administrative Building, a small historical farm-house converted into offices, and politely inquired of Shwaiko about the possibility of setting up a meeting with RVC's President and how one would go about it. He was asked what it was in regards to, and informed the secretary that it

8

was about school policy. Shwaiko had asked if he had spoken
to anyone else about the issue, and Kranish replied that he
had not. She said it would be best if he did that first
before approaching the President, as the President would
most likely ask him to do the same if he spoke with him.
Shwaiko then suggested he seek whichever department the
policy pertains to, and he replied that would most likely
be the Department of Public Safety (DPS).

20. That after sincerely thanking Shwaiko for her
help, and requesting a business card in case he needed to
get back in touch with the administrative office, she gave
him one and he politely thanked her again and told her he
would be going to speak with someone at the RVC DPS. At no
time was Shwaiko or anyone else alarmed or disrupted in any
way, nor did a breach of the peace ever occur. Kranish then
left the Administrative Building and drove straight to the
DPS which is a also the RVC Campus Police Department, which
houses deputized police officers with the same authority to
enforce local/state laws as ordinary municipal police.
Kranish walked into its small lobby/ waiting room and asked
the dispatch woman behind the glass-protected counter if he
could perhaps speak to someone concerning school policies.
She said yes he could, and called one of the officers on
dispatch, then asked him to take a seat in the waiting
area, which he did.

21. That a few minutes later Chief Joe Drought
(hereinafter referred to as "Drought") came through the
door that leads to the police offices. Kranish stood up,
politely introduced himself and told him his reason for
coming — that he wanted to speak with someone regarding
school policy. Another officer, Officer Edward Crumb
(hereinafter referred to as "Crumb"), came in the standard

9

entrance to the lobby, the one Kranish had used when he
entered. This door was directly across from the other door,
so Kranish was now standing between two armed police
officers. They spoke politely for a few minutes, and at
some point the officer to Kranish's right, Crumb, without
having probable cause or having first obtained a search or
arrest warrant, told Kranish to put his hands up. Kranish
complied and Crumb, without non-custody, pressured,
voluntary permission, probable cause or having obtained a
search warrant, grabbed and began fumbling with his empty
nylon pouch/holster. Crumb was trying to get it open, and
Kranish, concerned that he might damage it, instructed him
on how to release the single, large, very obvious and
apparent buckle mechanism on the front.

    22. That after Crumb successfully unclipped the
buckle, he confirmed there was nothing inside. Kranish
became little nervous by Crumbs strange and unreasonable
attitude and behavior, but assumed everything would be fine
because they saw he had no weapons. One Officer asked
Kranish if he had any weapons, and he informed him that he
did not. After being frisked and patted down, to verify
that was the case, and it was clear that Kranish was
unarmed and defenseless, as school policy stipulates, the
conversation continued. Kranish then expressed and
communicated his concern about RVC's anti-Second Amendment
policy, and explained how he believed it put students at
serious risk and discussed the Constitution, and the right
to keep and bear arms. He informed Crumb and Drought about
the organization he started, and they talked about the laws
in Illinois. Both Officers claimed many times to agree with
Kranish's views and claimed to share his beliefs. At one
point in the waiting room, Kranish was about to quote

Thomas Jefferson, when Drought said he didn't need to, as he knew all of the quotes as well. This was encouraging to Kranish — a knowledgeable and informed law enforcement officer that supposedly believed in freedom.

23. That Drought then asked Kranish to come in the back, so they wouldn't have to speak in the waiting room. He led Kranish into a room, shut the door, and they sat down and continued to talk about the beliefs the seemed to share. At some point, Drought told Kranish he had some other things to do, and that Crumb would be taking over. Crumb came in the room, and with a smug attitude and demeanor patronized Kranish with agreeing confirmations and quirky smiles, as he continued to express his beliefs.

24. That Crumb appeared more interested in Kranish's actions that day, and he repeatedly, without ever reading him his Constitutional rights, tried to get Kranish to fill out and sign a statement he had prepared. Kranish seeing no need for this, having done nothing wrong, and not knowing the legal implications involved in the document, respectfully declined.

25. That, having nothing to hide, Kranish cooperated by answering Crumb's questions, and they went through the entire story a number of times. Kranish did not then feel the need to stay silent, as he was confident he had done absolutely nothing wrong. Furthermore, Kranish never expected in the slightest that he would, and most importantly, could be arrested for doing nothing except expressing himself. So, he continued to answer Crumb's questions, all of them, truthfully. After being interrogated and detained for approximately one hour and a half to two hours, without having been read his rights, being afforded the benefit of counsel, or being free to

11

leave, Kranish grew tired of going over the story, and even more tired of waiting countless times as Crumb stepped out of the room. At about noon, having not eaten breakfast or lunch, Kranish still cooperated. Realizing his next class was at 12:20 that day, and it was about noon, Kranish informed Crumb that he would need to leave soon in order to make his next class. Crumb then informed Kranish, with a nice smile, that he wouldn't be going anywhere. Kranish asked why, and was told "we might be putting you under arrest." Kranish became very concerned, as he was not only obviously innocent of any wrongdoing, but had an exam scheduled for that class.

26. That Kranish then pleaded with Mr. Crumb to allow him to be at that class on time and was told that was "impossible." While Crumb left the room to confer with Drought, Kranish called his parents and his lawyer to inform them what was happening. Crumb then told him that he would most likely be placed under arrest, and that his car would be seized. Crumb had asked about his vehicle, and Kranish verified which one it was. Crumb asked Kranish if he would agree to allow them to search the vehicle. After thinking about this for a moment, and since it was approximately five minutes before his exam, Kranish, under duress, reluctantly offered to permit Crumb to search his vehicle, so long as he would allow him to make it to his class and exam on time. Crumb said that that wouldn't be possible.

27. That Crumb went out and back in again to confer with Drought, and this time brought a piece of paper purporting to detail Kranish's rights and requiring his initials and signature. The whole while he maintained his smug smile, and informed Kranish that he would be placed

under arrest. After a while, Crumb informed Kranish that he
was indeed under arrest, and when Kranish asked what the
charges were, he was told "Disorderly Conduct." The false
"justification" given for this was that he had "alarmed"
the woman (Shwaiko) in the administrative office.

28. That Kranish was absolutely appalled that they
would or could arrest him. Crumb then took his jacket and
empty holster "as evidence," and upon direction, signed a
receipt for them. Kranish was then taken into a holding
room with a height-chart on the wall. Crumb took his
picture and filled out "booking" papers. After Kranish was
given the receipt for his belongings, a form with the
criminal charges, and an Illinois citation and complaint he
was noticed to and did appear and plead "not guilty" in the
Winnebago County Courthouse, Rockford, Illinois, on October
26th, 2005. After being charged and released Officer Crumb
told Kranish, he was not allowed back on campus, and
threatened and warned him that if he were caught on campus,
he would be arrested for trespassing and sent to County
Jail

29. That in order to be allowed back on campus and
attend his classes, Kranish got in contact with school
officials and arrange a meeting. He spent the remainder of
the day doing this, and after calling many times and
leaving a message with a secretary and a voicemail, he was
able to get in contact with Amy Diaz, the Associate V.P. of
the counseling staff and was able to get an appointment
with her the next day. They met and went through the whole
story again. She typed up an "agreement" that would allow
Kranish to return to classes immediately, but only if he
signed it and agreed to its unilateral, non-negotiable
conditions. The "agreement" stated Kranish must not wear

13

his jacket or his empty holster during the school's investigation into the incident. Without having been afforded due process, and while laboring under duress of continuing to be excluded from classes and the fear of threat of expulsion and further criminal charges as well as prosecution of the existing criminal prosecution and the loss of his college education and paid tuition, Kranish reluctantly signed it, thereby having been, being and continuing to be permanently deprived without due process, his First Amendment right to peaceful expression. No independent lawful consideration was given to or received by Kranish in his execution of said "agreement" and, further, it was against public policy and unconstitutionally obtained because it was governmentally designed and procured expressly to deny Kranish his first Amendment rights under the United States Constitution.

30. That on information and belief, Kranish was knowingly, deliberately falsely charged and maliciously prosecuted by Crumb with the knowledge of and under the direction and conspiracy of Crumb, Drought, Diaz and Shwaiko in combination with and under the direction and supervision of Becherer, without probable cause with a baseless violation of criminal law for what they knew or should have known was merely the exercise his well established First Amendment right of free speech and when they knew or should have known him to be innocent of the untrue accusations made and the false charge brought.

31. That on December 8, 2005 a Circuit Judge of the Circuit Court of Winnebago County entered an order dismissing the above referenced criminal charge against Kranish on Motion of the Winnebago County States Attorney.

14

32. That the fictitious and false charges placed by the Defendants and the other actions complained of herein go right to the heart of and continually and ongoingly infringe upon and deny Kranish his Constitutional rights and have damage his previously good reputation.

33. That, on information and belief, all of the above wrongful acts were committed pursuant to the authorization and/or under the supervision, direction and of Drought and/or Becherer, who had ultimate decision making authority on behalf of the Board in such matters, respectively as the RVC Police Chief and President.

34. That on information and belief, Defendant Drought was at all time relevant, the chief law enforcement officer of RVC, and Becherer was the chief administrative officer of RVC and were therefore, by operation of state law and as a matter of fact and practice, a final decision makers, respectively, with regard to investigative, arrest, custodial, and administrative acts and decisions made with respect to Kranish and/or participated in as well as their professional actions and training of Campus Police, including but not limited to Crumb and Drought himself, in connection therewith.

35. These acts and decisions were reckless and unreasonable in light of existing law and directly and proximately caused the Constitutional violations, injuries and damages to Kranish hereinabove alleged and are directly chargeable to Defendant RVC and the Board because of said Defendants' status as their agents, employees and final decision makers.

COUNT I

(Deprivation of Civil Right - 42 U.S.C. § 1983)

1-35. Plaintiff realleges paragraph 1 through 34 of this Complaint as paragraphs 1 through 34 of this Count I as if set forth fully herein.

36.That, on information and belief, the Defendants foregoing acts and omissions were done and committed in violation of 42 U.S.C. § 1983 when each of the above-named Defendants were acting under color of law or were all acting jointly and/or in conspiracy with each other and/or other persons acting under color of law thereby intending to deprive and depriving Kranish of his rights, privileges and immunities, secured by the laws statutes and Constitution of the United States.

36. That, on information and belief, as a direct and proximate result of one or more of Defendant's foregoing acts and omissions, Kranish suffered a wrongful arrest and false imprisonment and loss of liberty, great emotional and mental shock, upset, pain, distress, anguish, public scorn, humiliation, and ridicule, great and permanent injuries to reputation and loss and deprivation of his civil rights under the first, fourth, fifth, eight, and fourteenth amendments to the United States Constitution, which injuries continue to this day and will continue and compound in the future.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, that he be awarded equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from threatening to,

retaliating, or arresting him or excluding him from
attending classes or coming onto and going about the RVC
campus for expressing his Second Amendment views or in any
other way placing any restraint on his liberty or for
engaging in for any other associated or similar peaceable,
symbolic speech such as wearing a jacket or other apparel
bearing the name of his Organization, its website, other
political message or from wearing an empty holster as
herein described, that a declaratory judgment be entered
against the Defendants and in his favor declaring that the
document(s) that he signed void and of no force and effect,
that the above-mentioned document and record of arrest be
ordered expunged and removed from all his academic and
police files, that this Court declare the rights of the
that a judgment of rescission of the above-mentioned
document be entered against Defendants jointly and
severally, that said document and record of arrest be
ordered expunged and removed from all his academic and
police files, plus he be awarded reasonable attorney's
fees, costs, and expenses and for such other and further
relief as may be just and proper in the premises, plus the
costs of this suit, attorneys fee under 42 U.S.C. § 1988
and such other and further relief as may be proper in the
premises.

COUNT II

(Conspiracy to Violate Civil Rights - 42 U.S.C. § 1985)

1-35. Plaintiff realleges paragraph 1 through 35 of
Count I as paragraphs 1 through 35 of this Count II as if
set forth fully herein.

36. That on information and belief and at all times
relevant, Defendants individually and in combination and
conspiracy with each other and/or other as of yet unknown

co-conspirator John and Jane Does, by their actions as set forth above committed certain overt acts as hereinabove set forth.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, that he be awarded equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from threatening to, retaliating, or arresting him or excluding him from attending classes or coming onto and going about the RVC campus for expressing his Second Amendment views or in any other way placing any restraint on his liberty or for engaging in for any other associated or similar peaceable, symbolic speech such as wearing a jacket or other apparel bearing the name of his Organization, its website, other political message or from wearing an empty holster as herein described, that a declaratory judgment be entered against the Defendants and in his favor declaring that the document(s) that he signed void and of no force and effect, that the above-mentioned document and record of arrest be ordered expunged and removed from all his academic and police files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned document be entered against Defendants jointly and severally, that said document and record of arrest be ordered expunged and removed from all his academic and police files, plus he be awarded reasonable attorney's fees, costs, and expenses and for such other and further

relief as may be just and proper in the premises, plus the costs of this suit, attorneys fee under 42 U.S.C. § 1988 and such other and further relief as may be proper in the premises.

## COUNT III
### (42 U.S.C. § 1983 Monell Claim)

1-36.  Plaintiff realleges paragraph 1 through 36 of Count II as paragraphs 1 through 36 of this Count III as if set forth fully herein.

37.  That on information and belief, and at all times relevant, Becherer had and enforced a strict policy, which was known, or should have been known, to the Board, of not allowing any peaceful student demonstrations, political speech, dissent or protests of any kind on college campuses, including, RVC, that he administered.

38.  That, additionally and alternatively, upon information and belief, Drought and/or Becherer, and or RVC and/or the Board failed to adequately train and supervise their respective above-named police officers, agents and employees with respect to proper investigatory and police procedures relating to, *inter alia*, searching and arresting, investigating, charging and prosecuting and denying persons such as Kranish under such circumstances their First, Fourth, Fifth and Fourteenth Amendment and other Constitutional rights.

39.  These policies, practices, customs and failures by Defendants directly and proximately caused the constitutional violations and injuries to Kranish, thereby making them directly chargeable to RVC and/or the Board.

40.  These policies, practices, and customs directly and proximately injured Kranish as hereinabove alleged.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, that he be awarded equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from threatening to, retaliating, or arresting him or excluding him from attending classes or coming onto and going about the RVC campus for expressing his Second Amendment views or in any other way placing any restraint on his liberty or for engaging in for any other associated or similar peaceable, symbolic speech such as wearing a jacket or other apparel bearing the name of his Organization, its website other political message or from wearing an empty holster as herein described, that a declaratory judgment be entered against the Defendants and in his favor declaring that the document(s) that he signed void and of no force and effect, that the above-mentioned document and record of arrest be ordered expunged and removed from all his academic and police files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned document be entered against Defendants jointly and severally, that said document and record of arrest be ordered expunged and removed from all his academic and police files, plus he be awarded reasonable attorney's fees, costs, and expenses and for such other and further relief as may be just and proper in the premises, plus the costs of this suit, attorneys fee under 42 U.S.C. § 1988

and such other and further relief as may be proper in the premises.

## COUNT IV
### (42 U.S.C. § 1985 Monell Claim)

1-36. Plaintiff realleges paragraph 1 through 36 of Count II as paragraphs 1 through 36 of this Count IV as if set forth fully herein.

37. That on information and belief, and at all times relevant, Becherer had and enforced a strict policy, which was known, or should have been known, to the Board, of not allowing any peaceful student demonstrations, political speech, dissent or protests of any kind on college campuses, including, RVC, that he administered, and, as the RVC Police Chief and/or Becherer President, who, respectively had ultimate decision making authority on behalf of the Board in such matters, were, by operation of state law and as a matter of fact, the final decision makers with regard to administrative acts and decisions that Defendants made and/or participated in as hereinabove described.

38. That said acts and decisions directly and proximately caused the constitutional violations, injuries and damages to Kranish hereinabove alleged and are directly chargeable to Drought as the RVC Police Chief and/or Becherer as President of RVC, because of their status as a final decision makers.

39. That, additionally and alternatively, upon information and belief and at all times relevant Drought as the RVC Police Chief and/or Becherer as President of RVC, failed to adequately train the above mentioned law enforcement personnel, including the aforementioned Drought and Crumb with respect to proper investigatory procedure

relating to, among other things, properly identifying and distinguishing between criminal perpetrators and law abiding citizens so as not to subject innocent persons to unwarranted, false arrest, unwarranted and unreasonable searches and seizures, illegal and false detention and imprisonment, unreasonable, false and baseless charges lacking probable cause and/or other infringements of their constitutional rights and liberties as herein alleged.

40. These policies, practices, customs and failures directly and proximately caused the constitutional violations and injuries to Kranish, thereby making them directly chargeable to Drought as the RVC Police Chief and/or Becherer as President of RVC, and in turn RVC and the Board.

41. These policies, practices, customs and failures directly and proximately injured Kranish as hereinabove alleged.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, that he be awarded equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from threatening to, retaliating, or arresting him or excluding him from attending classes or coming onto and going about the RVC campus for expressing his Second Amendment views or in any other way placing any restraint on his liberty or for engaging in for any other associated or similar peaceable, symbolic speech such as wearing a jacket or other apparel

bearing the name of his Organization, its website other political message or from wearing an empty holster as herein described, that a declaratory judgment be entered against the Defendants and in his favor declaring that the document(s) that he signed void and of no force and effect, that the above-mentioned document and record of arrest be ordered expunged and removed from all his academic and police files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned document be entered against Defendants jointly and severally, that said document and record of arrest be ordered expunged and removed from all his academic and police files, plus he be awarded reasonable attorney's fees, costs, and expenses and for such other and further relief as may be just and proper in the premises, plus the costs of this suit, attorneys fee under 42 U.S.C. § 1988 and such other and further relief as may be proper in the premises.

## COUNT V

### (Direct Action Under First Amendment)

1-36. Plaintiff realleges paragraph 1 through 33 of Count II this Complaint as paragraphs 1 through 36 of this Count V as if set forth fully herein.

37. That the above actions directly infringed and continue to violate Kranish's rights under the First Amendment to the United States Constitution and he is entitled to relief fashioned directly thereunder.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, that he be awarded equitable

relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from threatening to, retaliating, or arresting him or excluding him from attending classes or coming onto and going about the RVC campus for expressing his Second Amendment views or in any other way placing any restraint on his liberty or for engaging in for any other associated or similar peaceable, symbolic speech such as wearing a jacket or other apparel bearing the name of his Organization, its website other political message or from wearing an empty holster as herein described, that a declaratory judgment be entered against the Defendants and in his favor declaring that the document(s) that he signed void and of no force and effect, that the above-mentioned document and record of arrest be ordered expunged and removed from all his academic and police files, that this Court declare the rights of the that a judgment of rescission of the above-mentioned document be entered against Defendants jointly and severally, that said document and record of arrest be ordered expunged and removed from all his academic and police files, plus he be awarded reasonable attorney's fees, costs, and expenses and for such other and further relief as may be just and proper in the premises, plus the costs of this suit, attorneys fee under 42 U.S.C. § 1988 and such other and further relief as may be proper in the premises.

## PENDENT STATE COUNTS

### COUNT VI

(False Arrest)

1-36. Plaintiff realleges paragraph 1 through 36 of Count II as paragraphs 1 through 36 of this Count VI as if set forth fully herein.

37. That, on information and belief and at all times relevant, by their conduct the Defendants procured the false arrest, of Kranish without good, legal, reasonable or probable cause.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT VII
### (Illegal Search & Seizure)

1-36. Plaintiff realleges paragraph 1 through 36 of Count II as paragraphs 1 through 36 of this Count VII as if set forth fully herein.

37. That, on information and belief and at all times relevant, by their conduct the Defendants procured the unwarranted and unlawful search and seizure of Kranish and his property without good, legal, reasonable or probable cause.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT VIII

### (Illegal Detention - False Imprisonment)

1-36. Plaintiff realleges paragraph 1 through 36 of Count II as paragraphs 1 through 36 of this Count VIII as if set forth fully herein.

37. That, on information and belief and at all times relevant, by their conduct the Defendants procured the unwarranted and unlawful detention, and imprisonment of Kranish without good, legal, reasonable or probable cause.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT IX

### (Battery)

1-36. Plaintiff realleges paragraph 1 through 36 of Count II as paragraphs 1 through 36 of this Count IX as if set forth fully herein.

37. That, on information and belief and at all times relevant, by their conduct the Crumb made an offensive, unpermited touching of Kranish's body and property closely associated with and upon his person as aforesaid.

WHEREFORE, Plaintiff demands judgment against the Crumb, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT X

(Reckless, Unreasonable, Careless and Negligent Conduct)

1-37. Plaintiff incorporates by reference paragraphs 1 though 37 of Count V as paragraphs 1 though 37 of this Count X as if set forth fully herein.

38. That by their conduct Defendants, their employees and agents were reckless, unreasonable, careless and negligent in one or more of the following ways:

a. carelessly and negligently selecting Kranish for arrest and charging and prosecuting him;

b. carelessly and negligently threatening Kranish and excluding him from the RVC;

c. carelessly and negligently restraining and imprisoning Kranish;

d. carelessly and negligently trained or failed to be train in the proper procedures for arrest and detainment against Kranish under the circumstances, and

e. were otherwise carelessly and negligently arrested and detained with Kranish took his property and excluded him from the RVC campus.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general and compensatory damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, and such other and further relief as may be proper in the premises.

## COUNT XI

(Willful, Wanton and Reckless Conduct)

1-37. Plaintiff incorporates by reference paragraphs 1 though 37 of Count V as paragraphs 1 though 37 of this Count XI as if set forth fully herein.

38. That by their conduct Defendants, their employees and agents were willful, wanton and reckless in one or more of the following ways:

    a. willfully, wantonly and recklessly selecting Kranish for arrest and charging and prosecuting him;

    b. willfully, wantonly and recklessly threatening Kranish;

    c. willfully, wantonly and recklessly restraining and imprisoning Kranish;

    d. willfully, wantonly and recklessly training or failing to be train the officers and agents and employees of RVC herein named in the proper procedures to arrest, detain or refrain from arresting and detaining Kranish under the circumstances, and

    e. willfully, wantonly and recklessly taking property of and excluded Kranish from the RVC campus.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

COUNT XII

(Intentional Inflictions of
Mental and Emotional Distress)

1-37. Plaintiff incorporates by reference paragraphs 1 though 37 of Count V as paragraphs 1 though 37 of this Count XII as if set forth fully herein.

28

38. That, on information and belief and at all times relevant, by their conduct the Defendants intentionally and without regard for Kranish's emotional, physical or mental well being intentionally threatened, falsely arrested, charged, detained, imprisoned and prosecuted Kranish and compelled him to sign the document as aforesaid when they knew or should have known him to be innocent any criminal activity.

39. That as a direct and proximate result of Defendants intentional conduct they inflicted great and recurrent psychological, mental and emotional fear, anguish, strain, stress, pain, humiliation, distress, suffering and damage on Kranish.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

<u>COUNT XIII</u>

(Negligent Inflictions of Emotional Distress)

1-37. Plaintiff incorporates by reference paragraphs 1 though 37 of Count V as paragraphs 1 though 37 of this Count XIII as if set forth fully herein.

38. That, on information and belief and at all times relevant, by their conduct the Defendants negligently and without regard for Kranish's emotional, physical or mental well being intentionally threatened, falsely arrested, charged, detained, imprisoned and prosecuted Kranish and compelled him to sign the document as aforesaid when they

29

knew or should have known him to be innocent any criminal activity.

39. That said false imprisonment, stigmatization and false and malicious prosecutions of Kranish were deliberately made when Defendants knew or should have known him to be innocent of the untrue accusations made and the false charges so wrongfully brought.

40. That as a direct and proximate result of Defendants negligently conduct they inflicted great and recurrent psychological, mental and emotional fear, anguish, strain, stress, pain, humiliation, distress, suffering and damage on Kranish.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

COUNT XIV
(Common Law Conspiracy)

1-36. Plaintiff realleges paragraph 1 through 36 of Count II as paragraphs 1 through 36 of this Count IV as if set forth fully herein.

37. That, on information and belief and at all times relevant, the conspiracy hereinabove alleged also constituted a conspiracy by the Defendants to falsely and wrongfully assault, arrest, detain, confine and imprison falsely charge, maliciously prosecute, stigmatize, defame and hold Kranish in a false light before the public eye, and intentionally inflict upon him emotional and mental distress and pain, to procure his false and malicious prosecution and to abuse and misuse the legal process to

30

achieve said ends against him and cause him pain,
suffering, fear and humiliation and a loss of liberty and
other losses as hereinabove described when they knew or
should have known him to be innocent of the untrue
accusations made and the false charge so wrongfully brought
as aforesaid, was intentionally, recklessly and/or
negligently inflicted upon him emotional and mental
distress and pain and thereby causing him pain, suffering,
fear and humiliation, loss of liberty and other losses to
his person, business and profession as described herein
when they knew or should have known him to be innocent of
any criminal wrongdoing.

WHEREFORE, Plaintiff demands judgment against the
Defendants, and each of them, individually, jointly and
severally, and that he be awarded general, compensatory and
punitive damages in a sum in great excess of Seventy Five
Thousand ($75,000.00) dollars, plus the costs of this suit,
reasonable attorneys fees and such other and further relief
as may be proper in the premises.

COUNT XV

(Violations of Illinois Constitution)

1-36. Plaintiff realleges paragraph 1 through 36 of
Count II as paragraphs 1 through 36 of this Count XV as if
set forth fully herein.

37. The at all times relevant, the Illinois
Constitution of 1970 provided, *inter alia*, free speech,
association, privacy, due process, search, arrest and
seizure clauses concomitant with those of the United States
Constitution.

38. Defendants conduct, acts, omissions, policies,
customs, practices and failures were also violative under
the aforementioned Illinois Constitution provisions and

31

thereby intending to deprive and depriving Kranish of his rights, privileges and immunities, secured by the laws statutes and Constitution of the Illinois.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

Count XVI

(Defamation)

1-36. Plaintiff realleges paragraph 1 through 36 of Count II as paragraphs 1 through 36 of this Count XVI as if set forth fully herein.

37.   That on information and belief, by their conduct and communications, Defendants, under the supervision of Drought and/or Becherer, and or RVC and/or the Board, without privilege, made public and known to the public said false and defamatory allegations and charges of and concerning Kranish imputing criminal conduct to him, all to the great damage of his good name and reputation at RVC, in his RVC academic file and in his community.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

Count XVII

(False Light in the Public Eye)

32

1-37. Plaintiff realleges paragraph 1 through 37 of Count XVI as paragraphs 1 through 37 of this Count XVII as if set forth fully herein.

38. That by their conduct, Defendants, also thereby placed Kranish in a false light in the public eye.

WHEREFORE, Plaintiff prays for a judgment against Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy-Five Thousand Dollars ($75,000.00), plus the costs of this suit, and such other and further relief as may be proper in the premises.

### Count XVIII

#### (Malicious Prosecution)

1-36. That Plaintiff realleges Paragraphs 36 though 15 above as Paragraphs 1 through 36 of Count II of this Count XVIII as if set forth fully herein.

37. That, on information and belief, by their conduct, Crumb and Development and Shwaiko, under the supervision of Drought and Becherer, all employees and agents of RVC and the Board, procured the false and malicious prosecution of Kranish when they knew or should have known him to be innocent of the untrue accusations made and the false charge brought.

38. That on or about December 8, 2005, the Circuit Court of entered a final Order of Court dismissing the above-referenced criminal charge in Kranish's favor.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit,

reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT XIX

(Intentional Interference with Educational Contract)

1-37. Plaintiff realleges paragraph 1 through 38 of Count XVII as paragraphs 1 through 38 of this Count XIX as if set forth fully herein.

38. That all times relevant Defendants Crumb, Drought, Diaz, Shwaiko and Becherer, as individuals, knew or should have known that Kranish was a tuition paying student in good academic standing attending RVC and that as he had a contract with said educational institution for his education.

39. That on information and belief, by their wrongful conduct and conspiracy stated above, Defendants Crumb, Drought, Diaz, Shwaiko and Becherer, as individuals, intentionally interfered with said contract in such a way as to wrongfully interfere with and deny Kranish his right to attend classes, take exams and maintain a good academic record with said institution and created a stigmatizing academic record based, *inter alia* on said false criminal accusations so as to permanently damage his otherwise good academic record with said institution to which contractual benefits he was well known to entitled under said contract.

40. That as a result of said wrongful and intentional interference with said educational contract, the value of Kranish's contractual rights and benefits and his academic record, as well as Kranish's future academic, employment and career opportunities were damaged in such amount as the proofs will show and trier of fact may find.

WHEREFORE, Plaintiff demands judgment against the Defendants Crumb, Drought, Diaz, Shwaiko and Becherer, and

34

each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

## COUNT XX
### (Intentional Interference with Prospective Economic and Academic Advantage)

1-38. Plaintiff realleges paragraph 1 through 38 of Count XVII as paragraphs 1 through 38 of this Count XIX as if set forth fully herein.

39. That all times relevant Defendants Crumb, Drought, Diaz, Shwaiko and Becherer, as individuals, knew or should have known that Kranish was a tuition paying student in good academic standing attending RVC and that as he had a contract with said educational institution for his education and enjoyed good educational, advanced degree and prospective economic, career and employment advantage and opportunities.

40. That on information and belief, by their wrongful conduct and conspiracy stated above, Defendants Crumb, Drought, Diaz, Shwaiko and Becherer, as individuals, intentionally interfered with said contract and prospective economic, academic, career and employment advantage by denying Kranish his right to attend classes, take exams and maintain a good academic record with said institution and created a stigmatizing academic record based, *inter alia* on said false criminal accusations and charges.

41. That as a result of said wrongful and intentional interference with said prospective academic, economic, career, and employment advantages, the future value of Kranish's prospective advantages, rights, benefits and his

35

academic record were damaged in such amount as the trier of fact may find.

WHEREFORE, Plaintiff demands judgment against the Defendants, and each of them, individually, jointly and severally, and that he be awarded general, compensatory and punitive damages in a sum in great excess of Seventy Five Thousand ($75,000.00) dollars, plus the costs of this suit, reasonable attorneys fees and such other and further relief as may be proper in the premises.

COUNT XXI

(Injunctive Relief)

1-41.    Plaintiff realleges paragraphs 1 though 41 of Count XV as paragraphs 1 though 41 of this Count XX as if set forth fully herein.

42.    That pursuant reason of the foregoing Kranish has no adequate remedy at law and is, by reason of the foregoing, entitled to temporary, preliminary and permanent injunctive relief, reasonable attorney's fees, costs, and expenses.

WHEREFORE PLAINTIFF PRAYS that a judgment be entered awarding him equitable relief against each Defendants, jointly and severally, including but not limited to temporary, preliminary and permanent injunctive relief, to issue without bond, enjoining and restraining Defendants from threatening to, retaliating, or arresting him or excluding him from attending classes or coming onto and going about the RVC campus for expressing his Second Amendment views or in any other way placing any restraint on his liberty or for engaging in for any other associated or similar peaceable, symbolic speech such as wearing a jacket or other apparel bearing the name of his Organization, its website other political message or from

36

wearing an empty holster as herein described, and award him reasonable attorney's fees, costs, and expenses and for such other and further relief as may be just and proper in the premises.

## COUNT XXII
### (Declaratory Relief)

1-41.    Kranish realleges paragraphs 1 though 41 of Count I as paragraphs 1 though 41 of this Count XXII as if set forth fully herein.

42. That by reason of the foregoing an actual controversy exists between the parties and Kranish is entitled to a judicial declaration of his rights pursuant to 735 ILCS 5/2-701.

WHEREFORE PLAINTIFF PRAYS that a declaratory judgment be entered against the Defendants and in his favor pursuant to 735 ILCS 5/2-701 declaring that the document(s) that he signed void and of no force and effect, that the above-mentioned document and record of arrest be ordered expunged and removed from all his academic and police files, that this Court declare the rights of the parties and award him his reasonable attorneys fees, costs, and all further relief to which the she may be entitled and which this Court may deem proper and just in the premises.

## COUNT XXIII
### (Recession)

1-41.    Plaintiff realleges paragraphs 1 though 39 of Count XXII as paragraph 1 though 41 of this Count XXIII as if set forth fully herein.

42. That by reason of the foregoing Kranish is equitably entitled to rescind any and all purported agreements, contracts, consents, assignments, understanding

or documents upon which Defendants may obtained as hereinabove mentioned.

WHEREFORE PLAINTIFF PRAYS that a judgment of rescission of the above-mentioned document be entered against Defendants jointly and severally, directing that that any and said documents and records of arrest be produced, ordered expunged and removed from all of his academic and police files, plus he be awarded reasonable attorney's fees, costs, and expenses and for such other and further relief as may be just and proper in the premises.

Shaun A. Kranish, Plaintiff

By _____
Walter P. Maksym, his attorney

### ATTORNEY'S RULE 11 CERTIFICATION

The undersigned attorney certifies that he has read the foregoing complaint, that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact the same is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

_____
Walter P. Maksym, Plaintiff's Attorney

Walter P. Maksym
Attorney at Law
2056 North Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (773) 929-2923

## PLAINTIFF'S RULE 11 CERTIFICATION

The undersigned Plaintiff certifies, subject to the penalties provided by law, that he has read the foregoing instrument and that to the best of his knowledge, information, and belief, the matters stated therein are true in substance and fact except those matters which are alleged on information and belief, which he believes are true.

_____
Shaun A. Kranish, Plaintiff

Walter P. Maksym
Attorney at Law
2056 North Lincoln Avenue
Chicago, IL 60614-4525
Telephone: (773) 929-2923